UNITED STATES of America, Plaintiff–Appellee,

v.

Anthony TOLIVER, aka T, Defendant–Appellant.

United States of America, Plaintiff–Appellee,

v.

Anthony Brian Patterson, aka Brian Patterson, aka Little Ant, Defendant–Appellant.

Nos. 01–10222, 01–10237.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 10, 2003.

Filed Dec. 3, 2003.

Gary L. Huss, Fresno, CA, for Defendant–Appellant Patterson.

Quin Denvir & Ann H. Voris, Federal Defender's Office, Fresno, CA, for Defendant–Appellant Toliver.

John K. Vincent & Kevin P. Rooney, U.S. Attorney's Office, Fresno, CA, for Plaintiff–Appellee United States.

Before LEAVY, RYMER, and PAEZ, Circuit Judges.

## OPINION

PAEZ, Circuit Judge:

█ The Supreme Court's decision in *Apprendi v. New Jersey* requires that any fact that increases the maximum statutory sentence for a crime must be submitted to a jury, and proven beyond a reasonable doubt. Under 21 U.S.C. § 841(a), (b)(1), the maximum sentence for drug possession and distribution depends upon the quantity and type of drugs involved.[1] In this case, we consider the consequences when a district court properly complies with *Apprendi* by instructing the jury to return special findings on the quantity and drug type, but the jury, although finding the defendants guilty of conspiracy and attempt to possess and distribute a controlled substance, is unable to reach a verdict on the questions of drug type and quantity. In these circumstances, we conclude that the defendants are not entitled to an acquittal, that the government was not required to charge a lesser-included quantity offense, and that the district court could appropriately determine the type and quantity of drugs involved in the offense for purposes of applying the Sentencing Guidelines so long as the court did not impose a sen-

---

1. Subsection (a) sets out the unlawful acts, i.e.—it is illegal to knowingly or intentionally distribute or possess with the intent to distribute controlled substances. Subsection (b)(1) of 21 U.S.C. § 841 contains graduated penalty provisions, which depend upon the amount and type of drug involved. The penalties are: (1) under subsection (b)(1)(A), 10 years to life for 5 kilograms or more of cocaine or for 50 grams or more of cocaine base; (2) under subsection (b)(1)(B), 5 to 40 years for 500 grams or more of cocaine or for 5 grams or more of cocaine base; and (3) under subsection (b)(1)(C), up to 20 years if the quantity of cocaine or cocaine base involved in the offense is unknown. 21 U.S.C. § 841(b)(1).

tence that exceeded the statutory maximum sentence authorized by the jury's verdict. We have jurisdiction over the defendants' timely appeals under 28 U.S.C. § 1291, and we affirm.

## FACTUAL & PROCEDURAL BACKGROUND

In September 1999, the government indicted Anthony Brian Patterson, Anthony Toliver, and eight other co-defendants on drug-trafficking charges. The government charged that the defendants had conspired to distribute cocaine and cocaine base/crack and to possess these drugs with the intent to distribute in violation of 21 U.S.C. §§ 846 and 841(a)(1). The government specifically alleged in Count One of the Superceding Indictment the quantity and drug type involved in these crimes: "It is further alleged that the charged offense involved contains [sic] 50 grams or more of a mixture or substance containing cocaine base/crack and 5 kilograms or more of a mixture or substance containing cocaine." If the jury had found these quantities of cocaine or cocaine base, the sentence under 21 U.S.C. § 841(b)(1)(A) would be a minimum of 10 years and a maximum sentence of life.

Count Two also alleged that the defendants attempted to possess with intent to distribute drugs in violation of 21 U.S.C. §§ 846 and 841(a)(1) and 18 U.S.C. § 2. However, Count Two did not include an allegation specifying the quantity of cocaine involved in the attempt offense.

Patterson and Toliver pled not guilty and proceeded to trial. The day before the trial began, the Supreme Court issued its decision in *Apprendi*. The evidence at trial included wiretapped telephone calls from Toliver's residence and testimony from cooperating witnesses who had engaged in drug transactions with Patterson and Toliver.

Before jury deliberations began, Toliver proposed a special "Lesser Included Offense" jury instruction and verdict form instructing the jury that the larger quantity offenses alleged in Count One of the indictment included the lesser quantity offense of conspiracy to distribute 500 grams or more of cocaine and 5 grams or more of cocaine base/crack. Although the court did not adopt Toliver's proposed instruction, the court instructed the jury as follows:

> In addition to findings of guilty or not guilty, the verdict forms in this case require findings as to the nature of the controlled substances and quantities involved in Count One ... If you find the defendant not guilty you need not make any further findings as to the substances or quantities with regard to that defendant.
>
> If you find a defendant guilty, you must find what controlled substances were involved in the conspiracy, either powder cocaine or cocaine base/crack or both. The government's burden of proof is beyond a reasonable doubt and this decision must be unanimous.
>
> You must also attempt to reach a unanimous verdict regarding the allegation in the indictment that the conspiracy involved more than fifty (50) grams of a mixture or substance containing cocaine base/crack and five (5) kilograms or more of powder cocaine ... To determine the quantity you must determine whether the conspiracy actually involved:
>
> (1) distribution;
>
> (2) a cumulative total of fifty (50) or more grams of a mixture or substance containing cocaine base/crack or a cumulative total of more than five (5) but less than fifty (50) grams of a substance mixture; and a cumulative total of five (5) kilograms or more of a mixture or

substance containing powder cocaine or a cumulative total of more than five-hundred (500) grams (kilograms), but less then [sic] five (5) kilograms; and,

(3) actually known to or reasonably foreseeable by the defendant.

The government has the burden to prove the nature and quantity of controlled substances beyond a reasonable doubt.

The court also informed the jury that it would be given a special verdict form to record its findings.

The jury ultimately returned guilty verdicts on both counts. Although the jury determined that cocaine was involved in the conspiracy, it could not reach a verdict on whether cocaine base/crack was an object of the conspiracy or the quantity of cocaine that was involved in the conspiracy.

The defendants moved for judgment of acquittal under Federal Rule of Criminal Procedure 29, claiming that because drug quantity and type were critical elements of the underlying conspiracy offense, the jury's failure to reach a verdict on these elements prevented a conviction. They further argued that because the attempt count was subsumed by the conspiracy conviction and because the jury's verdict entitled them to an "implied acquittal," their convictions on both counts violated their right against double jeopardy.

The district court denied the Rule 29 motions, concluding that the convictions for conspiracy and attempt involving an undetermined quantity of cocaine were valid. The court determined that the defendants' double jeopardy argument was foreclosed by *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), because the crime of conspiracy requires proof of "the additional element of agreement." Additionally, the district court rejected the defendants' acquittal

motions because the jury had convicted the defendants of conspiracy to possess and distribute an unknown amount of cocaine. The district court also rejected the defendants' argument that double jeopardy precluded a retrial on the limited issues of drug quantity and whether cocaine base/crack was an object of the conspiracy. However, the court concluded that the jury's failure to find that crack cocaine was an object of the conspiracy or to agree on the quantity of cocaine meant that the defendants could only be sentenced under section 841(b)(1)(C), which provides for a maximum sentence of 20 years. Accordingly, the court ruled that the government was entitled to a limited retrial on these factual allegations, or, alternatively, the government could accept the 20-year statutory maximum sentence permitted under section 841(b)(1)(C).

The government elected to proceed to sentencing. In its formal election, the government reserved its right to argue for the maximum sentences provided under the statutes of conviction and the United States Sentencing Guidelines ("U.S.S.G."), including a guideline calculation based on the involvement of cocaine base/crack in the conspiracy. By its election, the government acknowledged that the maximum sentence for each count was 20 years, and that any drug type or drug quantity finding would be solely for purposes of determining the guideline sentencing range, which could not exceed the 20-year statutory maximum sentence authorized by the jury's verdict.

The presentence reports for both defendants recommended a finding that, on the basis of the evidence presented at trial, the defendants conspired to distribute 3-½ kilograms of cocaine. The government, however, argued that the defendants should be held responsible for an additional 4-½ kilograms of powder cocaine, as well as over

1–½ kilograms of cocaine/base crack, which would have increased the defendants' Sentencing Guidelines base offense level from a level 30 (for cocaine) to a level 38 (for cocaine/base crack).

In Toliver's objections to his PSR, he argued that because the jury was unable to agree on the quantity of cocaine involved in the conspiracy, he should be held responsible for less than 500 grams of cocaine—the minimal amount of cocaine recognized by U.S.S.G. § 2D1.1(c)(14). Patterson also objected to the quantity finding in his PSR, arguing that the amount of cocaine involved in the conspiracy was approximately three-quarters of a kilogram and that his sentence under the Sentencing Guidelines should be based on that amount.

At the sentencing hearings, however, the district court, rejecting the PSR's recommendation and the defendants' arguments, found that there were 5 kilograms of powder cocaine involved in the conspiracy, but that the evidence was insufficient to hold them responsible for cocaine base/crack. With these findings, the court determined that the base offense for each defendant was level 32 under U.S.S.G. § 2D1.1(c)(4). The district court adjusted Toliver's offense level upward three levels for his role in the offense, but declined to adjust downward for acceptance of responsibility. The district court's determination resulted in a final offense level of 35 with a criminal history category of I, which corresponded to a sentencing range of 168–210 months.

The court sentenced Toliver at the low end of the range—168 months.

When the district court sentenced Patterson, it declined to reduce his base offense level for acceptance of responsibility. Therefore, the court calculated Patterson's final offense level at 32, with a criminal history category of IV, which corresponded to a sentencing range of 168–210 months. However, because the district court found Patterson less culpable than Toliver, it used a unique confluence of factors—voluntary surrender, partial acceptance of responsibility, and his subordinate position to Toliver—to depart downward one offense level to level 31, and sentenced Patterson to 152 months.

The defendants timely appealed, principally arguing that their convictions and sentences violated the rule of *Apprendi*. Specifically, the defendants argue that (1) they were entitled to a judgment of acquittal on all counts because drug quantity was an essential element of the alleged offense, (2) they also were entitled to an acquittal because the government failed to charge a lesser-included quantity offense, and (3) the district court violated *Apprendi* by determining that the conspiracy involved 5 kilograms of cocaine for purposes of the Sentencing Guidelines.[2] We reject each of these contentions, and hold that the district court's post-trial rulings and sentencing determinations were consistent with the due process principles recognized by *Apprendi*.[3]

---

2. Defendant Patterson also raises a number of related arguments which we address in section III and also ultimately reject.

3. In light of the *Apprendi* issues raised by Patterson and Toliver in their opening brief, we deferred consideration of the defendants' consolidated appeals pending the Supreme Court's decision in *Harris v. United States*, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002). Following the Supreme Court's

decision in *Harris*, we invited the parties to file supplemental briefs regarding the impact of *Harris* on their *Apprendi* arguments. In their supplemental briefs, Patterson and Toliver reaffirmed their earlier contentions, with Patterson additionally arguing that the Superceding Indictment and the jury instructions violated his Fifth and Sixth Amendment rights and that *Apprendi* should be extended to include increased punishment within the

## ANALYSIS

### I. The Convictions

#### A.

 Patterson and Toliver were not entitled to a judgment of acquittal merely because the government had the foresight to include specific drug quantities and types in the Superceding Indictment.[4] The jury determined that the defendants engaged in a conspiracy and an attempt to possess and distribute an unknown quantity of cocaine, all that is required for conviction under 21 U.S.C. §§ 846, 841(a)(1) and 18 U.S.C. § 2. The jury's inability to determine the quantity or type of drugs involved in the conspiracy did not justify an acquittal; it only prevented the district court from imposing a sentence that exceeded 20 years, the maximum allowable sentence under section 841(b)(1)(c) when the offense involves an unknown quantity of drugs.

 The drug quantity and type determinations are the "functional equivalent[s]" of an element of a greater offense," because they are facts that have the potential to increase the statutory maximum sentence. *Apprendi,* 530 U.S. at 494 n. 19, 120 S.Ct. 2348. For purposes of *Apprendi,* then, these facts must be submitted to the jury, as was done here. Defendants point out that the term "element" has always been defined as a "fact necessary to constitute the crime charged," and that elements must be charged in the indictment, submitted to the jury, and proven beyond a reasonable doubt in order to sustain a conviction. *In re Winship,* 397 U.S. 358, 363, 90 S.Ct. 1068, 25 L.Ed.2d

368 (1970) (internal citations omitted). Thus, under the *Winship* rule, defendants contend that they were entitled to a judgment of acquittal because the drug quantity and type determinations were "elements" that were not proven beyond a reasonable doubt.

There is a difference, however, between a formal offense "element" as defined in *Winship* and the "functional equivalent of an element" under *Apprendi.* We label a fact an "element" under *Apprendi* only because it has a particular effect. As we explained in *United States v. Buckland,* "the relevant inquiry is one not of form, *but of effect*—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" 289 F.3d 558, 566 (9th Cir.2002). Thus, attaching the label "element" to a fact that may increase the maximum statutory sentence only has significance for purposes of satisfying the due process rights established by *Apprendi.*

 Indeed, drug quantity and type need only be treated as "functional equivalent[s]" of formal elements of an offense when a particular drug type or quantity finding would expose a defendant to an increased maximum statutory sentence, as they do not constitute formal elements of separate and distinct offenses under section 841(b)(1). When drug quantity or type would not have such an effect, they need not be accorded this special treatment. Thus, while we may label a fact as the "functional equivalent of an element" for purposes of *Apprendi,* that does not transform the fact into an offense "element" for purposes of *Winship.*[5]

---

Sentencing Guidelines. We consider these additional arguments below.

**4.** "We review the denial of a motion for acquittal under Federal Rule of Criminal Proce-

dure 29 de novo." *United States v. Pacheco–Medina,* 212 F.3d 1162, 1163 (9th Cir.2000).

**5.** We recently used the label "element" based on its effect under *Apprendi* in *United States v. Villalobos,* 333 F.3d 1070 (9th Cir.2003).

Here, because the government sought to obtain an increased sentence under 21 U.S.C. § 841(b)(1)(A), it properly included specific drug quantity and drug type allegations in the Superceding Indictment and attempted to prove those facts beyond a reasonable doubt. Had the jury found the special allegations true beyond a reasonable doubt, the jury's verdict would have authorized the court to sentence the defendants to an increased sentence under section 841(b)(1)(A). However, simply because the government included drug quantity and type allegations in Count One, that did not mean that those factual allegations must be treated as formal elements of the basic offense under section 841(a)(1). Thus, although the government failed to prove any of the specific drug quantities or that cocaine base/crack was involved in the conspiracy, the defendants were not entitled to a judgment of acquittal; rather, the district court was restricted in the maximum sentence that it could impose.

## B.

In rejecting the defendants' initial argument, we also reject their contention that they were entitled to an acquittal because the government did not, in the alternative, include in the Superseding Indictment the lesser-included offense of conspiracy to distribute an undetermined amount of cocaine, and in fact expressly chose not to propose a jury instruction to this effect. Because we have abandoned our traditional views of sentencing factors and offense elements, *see Buckland,* 289 F.3d at 566–68,[6] section 841(a)(1) defines the substantive crime, while section 841(b)(1) fixes the range of penalties, depending on the drug quantities and types involved in the offense. The graduated penalty provisions in section 841(b)(1) therefore do not constitute lesser included offenses.[7] This is the construction of sections 841(a)(1) and 841(b)(1) that we implicitly adopted in *Buckland,* 289 F.3d at 566–68, and that controls our decision here.

In this case, the jury's responses to the questions on the special verdict form established that (1) the defendants were guilty of conspiracy to violate section 841(a)(1), and that (2) cocaine was the object of the conspiracy. On the basis of the jury's verdict, the district court properly concluded that the jury found the defendants guilty of conspiracy to manufacture, possess, or distribute an undetermined amount of cocaine, exposing each defendant to a maximum statutory sentence of no more than 20 years under 21 U.S.C. § 841(b)(1)(C).[8] The government's failure

---

There we held that the defendant's plea of guilty to a charge of conspiracy to distribute a quantity of drugs that exposed him to the 40–year statutory maximum of 21 U.S.C. § 841(b)(1)(B) was not "knowing, intelligent, or voluntary because he was not informed that drug quantity was an *element* of his offense to be proven beyond a reasonable doubt." *Id.* at 1076 (emphasis added). *Villalobos* merely applied this rule, which we first enunciated in *United States v. Minore,* 292 F.3d 1109 (2002). Our decision in *Minore* recognized that "a finding of drug quantity is not necessary to convict [a defendant] of violating §§ 841(a) or 960(a)." *Id.* at 1117. Accordingly, our holding that drug quantity is not an element for purposes of *Winship* is

consistent with our decisions in *Villalobos* and *Minore.*

6. As we explained in *Buckland,* "The days of semantical hair splitting between 'elements of the offense' and 'sentencing factors' are over." 289 F.3d at 566 (internal citations omitted).

7. Accordingly, we need not address the defendants' estoppel argument.

8. As noted, the Superceding Indictment did not allege a specific quantity of cocaine with respect to the attempt charge, and, as reflected in the special verdict, the jury found

to allege a lesser quantity is of no help to the defendants, as the jury's verdict supported their convictions for the substantive crime of conspiracy to distribute and possess with the intent to distribute cocaine in violation of sections 846 and 841(a)(1), and no specific quantity finding by the jury was needed for the district court to impose a sentence of 20 years or less.

This conclusion, however, does not end our analysis. The defendants next argue that even if the district court correctly denied their motions for a judgment of acquittal, the court nonetheless violated *Apprendi* when, at sentencing, it determined that the defendants should be held responsible for 5 kilograms of cocaine. Thus, we turn to the question of whether in light of the jury's inability to agree on the quantity of cocaine involved in the conspiracy, the district court improperly exposed the defendants to a higher maximum statutory sentence when it determined that the conspiracy involved 5 kilograms of cocaine. We conclude that it did not.[9]

## II. Defendants' Sentences

The defendants argue that in fixing their sentences under the Sentencing Guidelines, the district court violated *Apprendi* by determining that 5 kilograms of cocaine was involved in the conspiracy. They contend that the court was limited to a finding of less than 500 grams, the minimum amount of cocaine recognized by U.S.S.G. § 2D1.1(c)(14). Because the jury was unable to determine the quantity of cocaine involved, the judge could not make such a determination without violating *Apprendi*.

The defendants' argument conflates the requirements for establishing the statutory maximum sentence with the requirements for determining sentences under the Sentencing Guidelines.[10] We explained the distinction between the two in *Buckland:*

> [I]n calculating sentences in drug cases, two separate findings of drug quantity must be made, one under the relevant statute, and then another under the Guidelines. *Apprendi* dictates that the drug quantity under the statute must be found by the jury (in a jury case), but *Apprendi* does not alter the authority of the judge to sentence *within* the statutory range provided by Congress. *See United States v. Lewis* ... (holding the constitutional rule announced in *Apprendi* does not prohibit a district court from finding, by a preponderance of the evidence, facts relevant to the application of the Guidelines). To determine where to fix the actual sentence to be imposed, the judge calculates quantity under the Guidelines which in turn yields an offense level and a number of months for the sentence. If the sentence determined by the Guidelines exceeds the statutory maximum on a given count,

---

9. The defendants also contend that the government was not permitted to retry them on the quantity or cocaine base/crack allegations, as a retrial on these issues would violate the prohibition against double jeopardy. This argument is essentially moot because the government elected to proceed with sentencing rather than a retrial.

10. We review *de novo* the constitutionality of a sentence imposed under the Sentencing Guidelines. *United States v. Patterson,* 292 F.3d 615, 631 (9th Cir.2002).

the defendants guilty of attempt. The jury's verdict thus supported a conviction for attempt to distribute and to possess with the intent to distribute an undetermined amount of cocaine in violation of 21 U.S.C. § 841(a)(1). Although the defendants argue that they are entitled to an acquittal on both counts, we fail to see how the defendants' *Apprendi* arguments implicate the attempt count, as only the conspiracy count contained a specific quantity allegation.

the sentence on that count, of course, is limited by the ceiling.

289 F.3d at 570.

■ Thus, the district court's quantity determination only violated *Apprendi* if it exposed the defendants to a sentence beyond the statutory range authorized by the jury's verdict. As we have previously held, "[i]f the jury convicted the defendant of a drug violation, even with no finding of a particular drug quantity, a sentence of twenty years or less would not violate *Apprendi*. . . . [T]he judge could still make a drug quantity finding and set the sentence without violating *Apprendi* as long as the sentence did not exceed twenty years for each count." *United States v. Sanchez–Cervantes,* 282 F.3d 664, 669–70 (9th Cir.2002).

■ In rejecting the defendants' acquittal motion, the district court determined and the government repeatedly acknowledged[11] that the maximum sentence authorized by the jury's verdict was 20 years (240 months) under section 841(b)(1)(C). After making the drug quantity determination, the district court's sentences on Count 1 for Patterson and Toliver were 152 months and 168 months respectively. This was well below the authorized maximum of 240 months. In sum, the district court's quantity determination for purposes of determining the defendants' sentencing range under the Sentencing Guidelines did not violate *Apprendi.*

### III. Other Arguments

Patterson set forth a number of additional, separate arguments challenging both his convictions and sentence. We address each argument in turn.

### A. *Mens rea*

■ Patterson first argues that his Fifth and Sixth Amendment rights to have every element presented to the trier of fact and the grand jury were violated by (1) the government's failure to include *mens rea* allegations that the defendants knew of both the drug quantity and type involved in the conspiracy in the indictment, and (2) the court's failure to instruct the jury that the government was required to prove beyond a reasonable doubt that the defendants knew of both the drug quantity and type that were involved in the conspiracy. This argument is foreclosed by *United States v. Carranza,* 289 F.3d 634, 644 (9th Cir.2002) (holding that a "defendant charged with importing or possessing a drug is not required to know the type and amount of drug").

### B. Mandatory minimum

Patterson also contends that because his sentence exceeded the statutory minimum authorized by the jury's verdict, it cannot stand under *Apprendi.* As we discussed above, this argument is not supported by the record in this case. In any event, this argument is foreclosed by *Harris,* 122 S.Ct. at 2414, 2419. *See also United States v. Hitchcock,* 298 F.3d 1021, 1021 (9th Cir.2002) (holding that in light of *Harris,* "[i]t is now clear that mandatory minimums do not implicate *Apprendi.*").

### C. Refusal to Depart Downward

■ Next, Patterson contends that his sentence was disparate from other defen-

---

11. At the sentencing hearing, the government stated, and counsel for both defendants agreed, that the government "was limited to a 20–year maximum on each count" and was "not asking the Court to use any statute that would take the maximum sentence beyond the . . . 'least onerous' sentencing provision, which is 841 subsection (b)(1), in parentheses, (C), in parentheses, which results in a term of imprisonment not more than 20 years."

dants involved in the conspiracy, namely those who pled guilty, and challenges the district court's refusal to depart downward to correct the disparity. Again, the record does not support Patterson's argument. As Patterson's sentence reflects, the district court did in fact depart downward one level to ensure that Patterson's sentence was lower than Toliver's, viewing the latter as more culpable. Because there is nothing in the record to indicate that the court believed it lacked the authority to depart downward even further, we lack jurisdiction to review the court's decision to depart only one level. *See United States v. Patterson*, 292 F.3d 615, 633 (9th Cir.2002) (holding that unless a district court's refusal to depart downward is based on its conclusion that it lacks the authority to depart, this court lacks jurisdiction to review a district court's decision not to depart downward).

### D. Guidelines punishment

██ Patterson also argues that *Apprendi*'s due process protections should be extended to include increases in base-offense levels under the Sentencing Guidelines. *Apprendi* is not implicated, however, when a drug quantity finding leads to an increase in the offense level if the actual sentence imposed was within the applicable statutory range under § 841(b)(1). *United States v. Ochoa*, 311 F.3d 1133, 1136 (9th Cir.2002).

### E. Quantity Determination

██ Finally, although Patterson did not develop this argument, he contends that the district court failed to err on the side of caution in determining drug quantity for Sentencing Guidelines purposes because the district court found that 5 kilograms were involved in the conspiracy when the presentence report concluded the amount was 3 kilograms. Reviewing the district court's factual findings for clear error, we are not left with "the definite and firm conviction" that a mistake has been made. *In re Banks*, 263 F.3d 862, 869 (9th Cir.2001).

The district court noted that the probation officer did not consider any quantity that may have been distributed when the wiretap was not in effect. However, upon reviewing the testimony of three witnesses, the court found that the defendants engaged in drug activity immediately after the wiretap and that "there [was] more than adequate evidence, it more than preponderates to show that the amount of powder cocaine that was trafficked in exceeded the three and a half kilos that the probation officer calculated." Because nothing in the record suggests that the court erred in considering this testimony in finding that an additional 1 kilograms should have been added to the amount recommended by the probation officer, we cannot say that the district court failed to exercise caution in determining the amount of cocaine attributable to the defendants.

### IV.

For all of the above reasons, the defendants' convictions and sentences are

**AFFIRMED.**