FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>ERIC HENRY WOODBERRY,<br>*Defendant-Appellant*. | No. 19-30225<br><br>D.C. No.<br>2:18-cr-00049-<br>RAJ-2 |
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>BRADFORD MARSELAS JOHNSON,<br>*Defendant-Appellant*. | No. 19-30284<br><br>D.C. No.<br>2:18-cr-00049-<br>RAJ-1<br><br>OPINION |

Appeal from the United States District Court
for the Western District of Washington
Richard A. Jones, District Judge, Presiding

Argued and Submitted November 17, 2020
Seattle, Washington

Filed February 11, 2021

Before:  Ronald M. Gould and Michelle T. Friedland, Circuit Judges, and Stephen R. Bough,[*] District Judge.

Opinion by Judge Gould

---

**SUMMARY**[**]

---

**Criminal Law**

The panel affirmed the district court in a case in which a jury (1) found Eric Woodberry and Bradford Johnson, who were arrested for robbing a licensed marijuana dispensary in Washington State, guilty of Hobbs Act robbery under 18 U.S.C. § 1951(a) and (b)(1); (2) separately found Johnson guilty of possession of a firearm in furtherance of a crime of violence and a drug trafficking crime under 18 U.S.C. § 924(c)(1)(A)(ii)); (3) convicted Woodberry, as Johnson's accomplice, of aiding and abetting Johnson's firearm possession offense; and (4) found that Johnson used a short-barreled rifle during the robbery in violation of 18 U.S.C. § 924(c)(1)(B)(i), which resulted in both defendants having their mandatory minimum sentences increased.

Rejecting Johnson's arguments regarding the district court's jury instruction for the Hobbs Act robbery charge, the panel held that the district court did not err in instructing:

---

[*] The Honorable Stephen R. Bough, United States District Judge for the Western District of Missouri, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

(1) that the "market for marijuana, including its intrastate aspects, is commerce over which the United States has jurisdiction," and (2) that the "commerce" element of a Hobbs Act robbery could be established if the robbery "could" affect commerce over which the United States has jurisdiction.

As to the district court's jury instruction regarding the short-barreled rifle provision in § 924(c)(1)(B)(i), the panel first clarified that the provision, which requires an increase in a defendant's minimum sentence, is not a sentencing "enhancement" but an essential element that must be proven to a jury beyond a reasonable doubt. The panel then held that § 924(c)(1)(B)(i) requires no showing of *mens rea* as to the rifle barrel's length to sustain a conviction.

The panel noted that Woodberry's argument that Hobbs Act robbery cannot serve as a predicate "crime of violence" under 18 U.S.C. § 924(c) is foreclosed by *United States v. Dominguez*, 954 F.3d 1251 (9th Cir. 2020).

---

## COUNSEL

Michael Nance (argued), Bainbridge Island, Washington, for Defendant-Appellant Eric Henry Woodberry.

Suzanne Lee Elliott (argued), Seattle, Washington, for Defendant-Appellant Bradford Marselas Johnson.

Erin H. Becker (argued), Assistant United States Attorney; Brian T. Moran, United States Attorney; United States Attorney's Office, Seattle, Washington; for Plaintiff-Appellee.

**OPINION**

GOULD, Circuit Judge:

Eric Woodberry ("Woodberry") and Bradford Johnson ("Johnson") (collectively, "Defendants") were arrested for robbing a licensed marijuana dispensary in Washington State. A jury found them both guilty of Hobbs Act robbery under 18 U.S.C. § 1951(a) and (b)(1). The jury separately found Johnson guilty of possession of a firearm in furtherance of a crime of violence and a drug trafficking crime under 18 U.S.C. § 924(c)(1)(A)(ii). As Johnson's accomplice, Woodberry was convicted of aiding and abetting Johnson's firearm possession offense. Finally, both Defendants had their mandatory minimum sentences increased after the jury found that Johnson used a short-barreled rifle during the robbery in violation of 18 U.S.C. § 924(c)(1)(B)(i).[1] Defendants appeal their convictions based on what they contend were erroneous jury instructions.

We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We affirm.

**I**

On November 21, 2017, two armed and disguised men walked into a licensed marijuana dispensary in Washington State. They ordered the employees at gunpoint to hand over cash and garbage bags filled with marijuana. Unbeknownst to the two robbers, however, the dispensary owner was monitoring the store on a live surveillance feed. He called

---

[1] Johnson and Woodberry were also charged with various other offenses, none of which are relevant for purposes of this appeal.

the police, who quickly arrived at the dispensary. The robbers made their getaway through a back door, leaving most of their haul behind.

Police arrested Defendants several hours later. Store employees later identified Defendants as the two men who had robbed the store. Though neither Defendant was armed upon arrest, Johnson was later linked to one of the weapons believed to have been used in the robbery: an MG Industries, model Marck-15, 7.62x39 rifle. Woodberry's gun was never recovered.

A grand jury indicted Defendants in 2018 and issued a superseding indictment one year later. Three of those charges are relevant here. First, Defendants were both charged with Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) and (b)(1). Second, Johnson was separately charged with possessing and "brandishing" a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). Woodberry, in turn, was charged with aiding and abetting Johnson's firearm offense. Third, Defendants were charged under 18 U.S.C. § 924(c)(1)(B)(i), which increases a defendant's mandatory minimum sentence if the defendant used a short-barreled rifle to commit a crime of violence. A short-barreled rifle is defined as a rifle "having one or more barrels less than sixteen inches in length." 18 U.S.C. § 921(a)(8).

In pretrial proceedings, the district court issued a jury instruction for the Hobbs Act robbery charge, which stated that the jury had to find that the robbery "affected or could have affected commerce over which the United States has jurisdiction." The instruction also defined "commerce" broadly:

The market for marijuana, including its intrastate aspects, is commerce over which the United States has jurisdiction.

It is not necessary for the government to prove that the defendant knew or intended that his conduct would affect commerce; it must prove only that the natural consequences of his conduct affected commerce in some way. Also, you do not have to find that there was an actual effect on commerce. The government must show only that the natural result of the offense would be to cause an effect on commerce to any degree, however minimal or slight.

With respect to the short-barreled rifle charge, the district court instructed the jury that it could find the Defendants guilty if the Government proved that the barrel of Johnson's rifle a barrel was less than sixteen inches long. The district court omitted, over objections from both Defendants, any requirement that the jury find that Defendants *knew* that the barrel of Johnson's rifle was shorter than sixteen inches.

After a trial, the jury found Defendants guilty on all of these charges. Defendants appealed, arguing that their convictions were based on faulty jury instructions.

## II

We review questions of statutory interpretation *de novo*. *United States v. Jefferson*, 791 F.3d 1013, 1015 (9th Cir. 2015). Likewise, "[w]hether a jury instruction misstates the law, an element of the crime, or the burden of proof is

similarly subject to de novo review." *United States v. Doe*, 705 F.3d 1134, 1143 (9th Cir. 2013).

## III

## A

Johnson asserts that the district court erred in its jury instruction for the Hobbs Act (the "Act") robbery charge. The Act provides, in relevant part:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. §1951(a).    In addition, the Act defines "commerce" as:

> [C]ommerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction.

18 U.S.C. § 1951(b)(3).

Johnson contends that the district court erred in instructing the jury that the "market for marijuana, including its intrastate aspects, is commerce over which the United States has jurisdiction." He further contends that the district court erred in instructing the jury that he could be found guilty under the Hobbs Act if the robbery "could have" affected commerce over which the United States has jurisdiction. Johnson argues that the instruction should have required the jury to find that the crime actually *did* obstruct, delay, or affect commerce.

We disagree with both arguments. In *Taylor v. United States*, the Supreme Court reaffirmed Congress' authority to regulate the national market for marijuana, including conduct that "even in the aggregate, may not substantially affect commerce." 136 S. Ct. 2074, 2080–81 (2016). The Court held that "a robber who affects or attempts to affect even the intrastate sale of marijuana grown within the States affects or attempts to affect commerce over which the United States has jurisdiction." *Id*. at 2080. The Court also explained that "proof that the defendant's conduct in and of itself affected or threatened commerce is not needed." *Id*. at 2081. "All that is needed is proof that the defendant's conduct fell within a category of conduct that, in the aggregate, had the requisite effect." *Id*.

Johnson contends that *Taylor* is inapposite because there, the Court's holding was expressly limited to "cases in which the defendant targets drug dealers for the purpose of stealing drugs or drug proceeds." *Id*. at 2082. Johnson relies on the Court's statement in *Taylor* that its holding was cabined to the facts before it. *Id*. ("We do not resolve what the Government must prove to establish Hobbs Act robbery where some other type of business or victim is targeted.").

We reject Johnson's unreasonably narrow interpretation. *Taylor* is binding because we see no meaningful difference—at least for purposes of determining Congress' Commerce Clause powers—between the drug dealer in *Taylor* and the licensed marijuana dispensary in this case. Because both are involved in the market for marijuana, it is clear to us that a robbery of a licensed marijuana dispensary falls within the same category of conduct that the Court addressed in *Taylor*. Regardless of the fact that some states have legalized marijuana for purposes of their state laws, the sale of this substance affects the interstate market for it. *Cf. Gonzales v. Raich*, 545 U.S. 1, 8–9 (2005) (holding that Congress's power to regulate interstate markets encompasses intrastate markets for marijuana that is produced and consumed locally and in compliance with state laws).

Relatedly, Johnson is wrong that the jury instructions amounted to a directed verdict on the "commerce" element. As *Taylor* made clear, Congress may regulate robberies that only affect intrastate commerce so long as they "are part of an economic 'class of activities' that have a substantial effect on interstate commerce." *Taylor*, 136 S. Ct. at 2080 (quoting *Raich*, 545 U.S. at 17). The district court's jury instruction was not a directed verdict on the "commerce" element because it delineated the scope of "commerce over which the United States has jurisdiction," 18 U.S.C. § 1951(b)(3), consistent with what the Court held in *Taylor*. Indeed, the district court's instruction quoted directly from *Taylor*. *Id.* ("Under *Raich*, the market for marijuana, including its intrastate aspects, is commerce over which the United States has jurisdiction." (quotation marks omitted)). That purely legal determination did not strip the jury of the ability to resolve the factual disputes underlying the charges: whether

the dispensary engaged in marijuana-related commerce and whether Defendants robbed the dispensary.

We therefore hold that the district court did not err in instructing the jury: (1) that the "market for marijuana, including its intrastate aspects, is commerce over which the United States has jurisdiction," and (2) that the "commerce" element of a Hobbs Act robbery could be established if the robbery "could" affect commerce over which the United States has jurisdiction.

**B**

Defendants also challenge the district court's jury instruction regarding the short-barreled rifle provision in § 924(c)(1)(B)(i).[2]   They argue that because the short-barreled rifle provision contains a *mens rea* requirement, the district court should have instructed the jury to convict only if Defendants *knew* that the rifle barrel was less than sixteen inches long.  We disagree.

**1**

Before reaching this issue, however, we address a matter that requires clarification.  Throughout this appeal, the Government has repeatedly referred to the short-barrel provision in § 924(c)(1)(B)(i) as a sentencing "enhancement," rather than an element.

---

[2] Woodberry separately argues that Hobbs Act robbery cannot serve as a predicate "crime of violence" for a conviction under 18 U.S.C. § 924(c).  His argument is foreclosed, however, by our decision in *United States v. Dominguez*, 954 F.3d 1251, 1261 (9th Cir. 2020) ("We reaffirm that Hobbs Act robbery is a crime of violence under 18 U.S.C. § 924(c)(3)(A) . . . .").

In *Alleyne v. United States*, the Court held that "[a]ny fact that, by law, increase[s] the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." 570 U.S. 99, 103 (2013). Here, the short-barrel provision *requires* an increase in a defendant's minimum sentence. 18 U.S.C. § 924(c)(1)(B)(i) ("If the firearm possessed by a person convicted of a violation of this subsection . . . is a short-barreled rifle . . . the person shall be sentenced to a term of imprisonment of not less than 10 years."). Applying the categorical rule set forth in *Alleyne*,[3] we hold that the short-barrel provision in § 924(c)(1)(B)(i) is an essential element that must be proven to a jury beyond a reasonable doubt.

We note that this distinction is somewhat semantic because here, the district court properly put to the jury the question of whether the barrel of Johnson's rifle was less than sixteen inches in length. Nonetheless, because we and the Supreme Court have referred to facts that increase mandatory minimum penalties as sentencing enhancements in the past, *see, e.g.*, *Dean v. United States*, 556 U.S. 568 (2009); *United States. v. McDuffy*, 890 F.3d 796 (9th Cir. 2018), we so hold to remove any possibility of confusion and to reflect the Supreme Court's holding in *Alleyne*.

---

[3] In his briefing, Johnson relied heavily on the Supreme Court's decision in *United States v. O'Brien*, in which the Court applied a multi-factor test to determine whether Congress intended for the "machinegun provision" of § 924(c)(1)(B)(ii) to be an element of the offense. 560 U.S. 218, 225–26, 230 (2010). Although our decision today is consistent with *O'Brien*, that case has been rendered obsolete by *Alleyne*, so we need not apply that multi-factor analysis.

**2**

Having established that the short-barrel provision is an essential element, we decide whether its application to Defendants requires a showing of *mens rea*. In other words, did the Government have to show that Woodberry and Johnson *knew* that the rifle was a short-barreled rifle? We hold that it did not, because § 924(c)(1)(B)(i) contains no *mens rea* requirement.

The Supreme Court's decision in *Dean v. United States*, 556 U.S. 568, guides our analysis. In *Dean*, the Court considered a slightly different but adjoining provision in § 924, which increases the mandatory minimum sentence imposed for "crime of violence" offenses involving a "firearm [that] is discharged." 18 U.S.C. § 924(c)(1)(A)(iii). As a whole, the provisions in subsection (A), which houses the "discharge" provision, increase the mandatory minimum sentence for an offense depending on whether the firearm is possessed, brandished, or discharged, respectively:

> [A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—
>
> (i) be sentenced to a term of imprisonment of not less than 5 years;
>
> (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and

> (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

18 U.S.C. § 924(c)(1)(A).

In determining whether the discharge provision contained a *mens rea* requirement, the Court looked to several factors. First, the Court considered the language of the statute and noted that it was phrased in the passive voice. The Court observed that "[t]he passive voice focuses on an event that occurs without respect to a specific actor, and therefore without respect to any actor's intent or culpability." *Dean*, 556 U.S. at 572 (citing *Watson v. United States*, 552 U.S. 74, 81 (2007)). This suggested that Congress did not intend to include a *mens rea* requirement. *Id*.

Second, the Court looked to the overarching structure of § 924(c)(1)(A), and stressed that Congress "expressly included an intent requirement" for subsection (A)(ii), which is listed right before the discharge provision at issue in *Dean* and imposes heightened penalties for "brandishing" a firearm. *Id*. at 572–73. The discharge provision, by contrast, contained no such language. The Court remarked that "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Id*. at 573 (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)).

Finally, the Court reasoned that *mens rea* was not required because the discharge provision penalizes consequences of already unlawful acts. *Id*. at 572–77. Applying these factors, the Court held that the "discharge"

provision in § 924(c)(1)(A)(iii) required no separate proof of intent. *Id*. at 577.

Here, the short-barrel rifle element is housed in the subsection immediately following the discharge provision in *Dean*, s*ee* 18 U.S.C. § 924(c)(1), so the Court's reasoning in that case is particularly instructive here. While subsection (A)—the broader subsection at issue in *Dean*—imposes heightened penalties based on the way in which a gun is used in committing a crime of violence, subsection (B) increases a defendant's sentence based on the type of weapon she or he uses:

> (B) If the firearm possessed by a person convicted of a violation of this subsection—
>
> (i) is a short-barreled rifle, short-barreled shotgun, or semiautomatic assault weapon, the person shall be sentenced to a term of imprisonment of not less than 10 years.

18 U.S.C. § 924(c)(1)(B)(i).

Like the provision at issue in *Dean*, the short-barrel element is silent with respect to a knowledge requirement and is phrased in the passive voice. *See id.* § 924(c)(1)(B)(i). This suggests that Congress did not intend to include a *mens rea* requirement. Subsection (B)(i) merely asks whether the rifle used in the robbery "is a short-barreled rifle"; it does not specify any requirement that the defendant knew the rifle's exact characteristics.

The structure of § 924(c)(1) also suggests that the short-barreled provision does not contain a *mens rea* requirement. As the Court noted in *Dean*, the fact that the "brandish" provision in subsection (A)(ii) contains a *mens rea*

requirement suggests that if Congress had intended for the short-barreled provision to require some showing of intent, then Congress would have expressly included that requirement.

Defendants nonetheless urge us to depart from *Dean* and instead follow the Supreme Court's holding in *Staples v. United States*, 511 U.S. 600 (1994). In *Staples*, the defendant was convicted under 26 U.S.C. § 5861(d), which imposes up to ten years of imprisonment for possessing an unregistered automatic gun. *Id.* at 602–03. The Court applied a longstanding presumption that when a criminal statute is entirely silent as to the *mens rea* required for an offense, courts will assume Congress did not intend to "dispense with a conventional mens rea element, which would require that the defendant know the facts that make his conduct illegal." *Id.* at 605. Moreover, the Court inferred that Congress would not have intended to impose such a harsh penalty on defendants who were unaware they were violating the law. *Id.* at 618.

We recently observed that this presumption applies where a criminal statute is "entirely silent on the mens rea required for a criminal offense," particularly "when a different reading would have the effect of criminalizing 'a broad range of apparently innocent conduct.'" *United States v. Collazo*, — F.3d —, 2021 WL 129792 at *10 (9th Cir. 2021) (en banc) (quoting *United States v. X-Citement Video*, 513 U.S. 64, 71 (1994)). That is not the case here.

First, as the Court recognized in *Dean*, § 924(c)(1) is not entirely silent on the *mens rea* required to support a conviction. Second, reading a *mens rea* requirement into the statute is not necessary to distinguish between wrongful and otherwise innocent acts. As we explained in *Collazo*, the *mens rea* presumption does not apply to elements that do not

separate innocent from wrongful conduct. *Id*. at \*13 ("Once a defendant knowingly or intentionally violates federal law, 'it is not unusual to punish individuals for the unintended consequences of their *unlawful* acts.'" (quoting *Dean*, 556 U.S. at 575)).

The short-barreled rifle provision is one such element. We see no reason to apply the *mens rea* presumption here, in part because the statute in question does not penalize "entirely innocent" conduct. *Rehaif v. United States*, 139 S. Ct. 2191, 2197 (2019). Under § 924(c)(1), the short-barrel rifle provision applies only when the defendant is guilty of an underlying crime. Although Johnson's use of a short-barrel rifle must be proved for the mandatory minimum in § 924(c)(1)(B)(i) to apply, that predicate fact "do[es] not criminalize otherwise innocent conduct, because the underlying conviction does not depend on the presence or absence of the predicate fact." *McDuffy*, 890 F.3d at 801. Indeed, Defendants were found "guilty of unlawful conduct twice over" before the jury ever considered whether the firearm was a short-barreled rifle. *Dean*, 556 U.S. at 576.

At its core, this case calls for no more than a straightforward application of *Dean*. We hold that § 924(c)(1)(B)(i) requires no showing of *mens rea* as to the rifle barrel's length to sustain a conviction.

## C

We hold that the district court did not err in instructing the jury that the "market for marijuana, including its intrastate aspects, is commerce over which the United States has jurisdiction," or the "commerce" element of Hobbs Act robbery could be established if the robbery "could" affect commerce over which the United States has jurisdiction. Finally, we hold that the short-barreled element in

§ 924(c)(1)(B)(i) does not contain a separate *mens rea* requirement.

**AFFIRMED.**